# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **PRUDENCE KIRKEGAARD,** )<br>)<br>**Plaintiff,** )<br>)     **CIVIL ACTION**<br>**v.** )<br>)     **No. 10-cv-4125-KHV**<br>**GRANT DAVIS,** )<br>)<br>**Defendant.** )<br>_____) | |

## MEMORANDUM AND ORDER

Prudence Kirkegaard brings legal malpractice claims against Grant Davis. Plaintiff alleges that because of his negligence, fraud and breach of fiduciary duty, her legal interests in certain tort claims lost settlement value. The claims which plaintiff settled asserted that Bristol-Myers Squibb Company ("Bristol-Myers") failed to take measures to prevent Robert Courtney, a pharmacist, from diluting chemotherapy drugs which were prescribed for her now deceased husband, Martin Kirkegaard. Hundreds of plaintiffs brought similar claims which the parties settled according to a "Global Settlement Agreement."

This matter comes before the Court on <u>Defendant Grant Davis' Motion For Summary Judgment</u> (Doc. #245) filed April 11, 2016.[1] Defendant asserts that the statute of limitations bars plaintiff's claims.

In <u>Booth v. Davis</u>, No. 10-4010-KHV, the Court recently addressed Davis' motion for summary judgment in a case with similar claims. See <u>Memorandum And Order</u> (Doc. #337) in

---

[1] On July 15, 2015, Davis filed this motion under seal. See <u>Defendant Grant Davis' Motion For Summary Judgment</u> (Doc. #201). On March 23, 2016, the Court directed the parties to file public versions of all documents previously filed under seal, with confidential medical and personal identifying information redacted. See <u>Memorandum And Order</u> (Doc. #234).

Case No. 10-4010-KHV, filed April 25, 2016. In <u>Booth</u>, the Court set out a detailed legal framework and analysis of the issues which defendant's motion in this case presents. <u>See</u> <u>id.</u> The Court hereby incorporates by reference the law set out in <u>Booth</u>. For reasons set forth below and more fully detailed in <u>Booth</u>, the Court finds that defendant's motion should be sustained.

**I.   Facts**

For purposes of summary judgment, the following facts are either uncontroverted or construed in the light most favorable to plaintiff.

   A.   <u>The Suit Against Courtney Pharmacy, Robert Courtney, Bristol Myers And Eli Lilly</u>

On December 7, 2001, Grant Davis filed an action in state court in Jackson County, Missouri on behalf of Prudence Kirkegaard, individually and as plaintiff ad litem for her deceased husband, Martin Kirkegaard.[2]  Kirkegaard sued Courtney Pharmacy, Inc. d/b/a/ Research Medical Tower Pharmacy, Robert Courtney and Bristol-Myers. The lawsuit alleged that Martin Kirkegaard died or suffered lost chance of survival on account of diluted chemotherapy medication which he received from Courtney. <u>See</u> Doc. #202-2.

On November 14, 2002, Kirkegaard signed a Disclosure of Global Settlement with Bristol-Myers and Eli Lilly (another pharmaceutical company involved in similar lawsuits). <u>See</u> Doc. #202-5 at 4. The disclosure stated that Davis' law firm represented the majority of the plaintiffs in over 300 separate lawsuits regarding Courtney's dilution of chemotherapy medication. It further stated that Bristol-Myers and Eli Lilly had made a joint settlement offer to resolve all of the cases.[3]  The

---

[2]   Martin Kirkegaard died on January 19, 2001.

[3]   Davis and his associates did not notify plaintiff of the mediation which resulted in the global settlement.

disclosure referred to the global settlement agreement and by signing the disclosure, Kirkegaard represented that she had reviewed and understood the terms of the settlement agreement, and that she understood that she had the right to opt out of the settlement agreement and to pursue her claims separately. She also represented that she understood that a Special Master would determine her right to receive funds under the settlement agreement.

The settlement agreement provided that a settlement fund of no less and no more than a specified amount would be established through binding arbitration. Kirkegaard acknowledged that Bristol-Myers and Eli Lilly had offered Georgia Hayes (plaintiff in a similar case) settlements of approximately $1.45 million each and that Hayes would not be participating in the distribution of funds by the Special Master.[4]

Also on November 14, 2002, Kirkegaard signed a Release And Settlement Agreement which stated that she understood the process by which the Special Master would determine the settlement amounts and acknowledged that she agreed to accept the settlement amount determined by the Special Master as a full and complete compromise of her claims.[5] Doc. #202-5 at 5.

---

[4] When the parties reached the global settlement, trial had started in Hayes' case.

[5] The Release And Settlement Agreement provided in part as follows:

2. Settlement Amount. In consideration of the Release and Discharge set forth above, claimants hereby accept entitlement to a settlement amount to be determined by a Special Master appointed by the Court. Claimants acknowledge that they have consulted with their attorneys prior to executing this Agreement, and further acknowledge: (1) that they understand the process by which settlement amounts will be determined by the Special Master; and (2) that they have agreed to accept the settlement amount as determined by the Special Master as a full and complete compromise of all claims against Lilly and/or [Bristol-Myers]. The amount determined by the Special Master shall be set forth in the attached Certification of Special Master.

(continued...)

On January 15, 2003, Kirkegaard submitted a claim form which stated that she agreed to give up her rights against Bristol-Myers and Eli Lilly. She initialed every page and submitted an Affidavit of Accuracy for all information reported in the form. Doc. #202-6.

On May 20, 2003, the Special Masters[6] awarded Kirkegaard $339,562.88. Doc. #202-7. On June 23, 2003, Kirkegaard signed a Release Of Courtney Qualified Settlement Fund. Doc. #202-10.

On July 8, 2003, Missouri Circuit Judge Lee Wells, who was presiding over the global settlement proceedings, approved the Proposed Allocation of Wrongful Death Settlement. Doc. #202-8. On July 10, 2003, Kirkegaard signed a Wrongful Death Settlement Sheet in which she acknowledged receipt of a copy of the settlement sheet. Kirkegaard also stated that she agreed with its contents and approved payment of attorney's fees. See Doc. #202-9.

On July 13, 2011, Kirkegaard testified that she accepted the settlement because if she had opted out, "they could have withdrawn the whole offer." Doc. #227-22 at 3. When asked whether she knew that jury trials can result in zero verdicts, she responded, "Well, how would I have known if it was never discussed with me?" Doc. #262-1 at 4. She testified that after reading the settlement papers, she would have liked to have more information. She stated that she did not contact Davis or his firm with questions because she "trusted them to tell [her] what was happening." Doc. #227-22 at 4. When asked if she was unhappy when she reviewed the disclosure of global settlement on November 14, 2002, Kirkegaard testified that "I really hadn't been given any information at that

---

[5](...continued)
Doc. #202-5 at 5.

[6]   Although the Release And Settlement Agreement referred to "A Special Master," ultimately two Special Masters determined the amount of the settlement awards.

time to be unhappy about, had I?"  Doc. #262-1 at 6.

   B.   The Tilzer Case

In June of 2010, Davis sent Kirkegaard a letter informing her of the Tilzer decision.[7]

   C.   The Complaint And Pretrial Order In This Case

On September 29, 2010, plaintiff filed the complaint in this case.  The Pretrial Order (Doc. #219-1) filed August 19, 2015 supercedes the complaint.

Plaintiff alleges that she hired Davis to represent her individually and as plaintiff ad litem for her husband's estate in a lawsuit against Bristol-Myers for negligence and fraud regarding dilution of cancer treatment drugs which Courtney had provided her husband.  Plaintiff alleges that Davis represented clients in 243 of 348 cases involving similar claims against Eli Lilly and Bristol-Myers and that he made aggregate settlement demands without advising his clients (including plaintiff) that (a) the first-filed Hayes case was selected to go to trial first; (b) the Special Masters determined settlement amounts according to tiers, based on the timing of claims; and (c) as the sole member in the first tier, Hayes received much more in settlement than other plaintiffs.  Plaintiff also alleges that Davis acted to conceal or failed to disclose (a) the specific amounts awarded to all families and the criteria and methodology used to determine the awards; (b) serious conflicts of interest between Davis and each of his clients; and (c) that Davis had a strong interest in persuading each of his clients to participate in the global settlement agreement so that he could obtain his aggregate fee.  Plaintiff seeks loss of settlement value and disgorgement of attorney fees.

---

   [7]  The Court incorporates by reference the discussion of Tilzer v. Davis, Bethune & Jones, LLC, 288 Kan. 477, 486 (2009) in the Court's Memorandum And Order (Doc. #337) in Booth v. Davis, No. 10-4010-KHV, filed April 25, 2016, at 5-9.

**II.     Analysis**

Davis contends that he is entitled to summary judgment because the two-year statute of limitations bars plaintiff's claims. Specifically, he asserts that plaintiff's cause of action accrued at the latest by July 10, 2003 when plaintiff received the settlement funds. At that point, she knew that Hayes had received vastly more in her settlement with Eli Lilly and Bristol Myers. Plaintiff argues that the action did not accrue until July of 2010, when she learned of the Tilzer decision dated April 3, 2009. Plaintiff thus asserts that the complaint which she filed on September 29, 2010 was timely.

A layperson is not expected to have legal expertise or to hire a lawyer for a second opinion. See Dearborn, 248 Kan. at 266. Here, however, by July 10, 2003, plaintiff knew that she had received a settlement which was a great deal less than Hayes (thus putting her on notice of the alleged injury). On July 10, 2003, she also knew that her attorney had handled her settlement and most of the settlements in the Courtney cases. Thus she knew or reasonably should have known that the alleged injury was due to attorney conduct. At that point she had knowledge of the material facts essential to her cause of action: an attorney-client relationship, negligence or breach of duty by Davis, proximate cause and injury. She could have filed suit at that time, just as the Tilzers did**.** The Court therefore finds that at the latest, plaintiff's cause of action accrued on July 10, 2003. The two-year statute of limitations, K.S.A. § 60-513(b), thus bars plaintiff's legal malpractice claims. The Kansas Supreme Court decision in Tilzer had no material effect on when plaintiff's cause of action accrued: it vested no rights in plaintiff which did not already exist. And while it may have provided encouragement to sue, Kansas law does not toll a statute of limitations, or prevent it from running in the first place, pending the development of legal authority which is favorable to plaintiff's claims.

**IT IS THEREFORE ORDERED** that Defendant Grant Davis' Motion For Summary Judgment (Doc. #245) filed April 11, 2016 be and hereby is **SUSTAINED**.

Dated this 29th day of April, 2016 at Kansas City, Kansas.

s/ Kathryn H. Vratil  
KATHRYN H. VRATIL  
United States District Judge
